# UNITED STATES DISTRICT COURT
for the
Northern District of California

| United States of America | ) | |
|---|---|---|
| v. | ) | |
| Christina Burden | ) | Case No. 4:21-mj-70194-MAG |
| | ) | |
| | ) | |
| | ) | |
| | ) | |

*Defendant(s)*

**FILED**

Feb 03 2021

SUSAN Y. SOONG
CLERK, U.S. DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
OAKLAND

## CRIMINAL COMPLAINT

I, the complainant in this case, state that the following is true to the best of my knowledge and belief.
On or about the date(s) of June 20, 2020 in the county of Alameda in the Northern District of California, the defendant(s) violated:

| Code Section | Offense Description |
|---|---|
| 18 U.S.C. 1344 | Bank Fraud |
| | Maximum Penalties: 30 years imprisonment; $1,000,000 fine; 3 years supervised release; $100 special assessment; forfeiture |

This criminal complaint is based on these facts:

See attached affidavit of TIGTA Agent Alofagia Onciano

☑ Continued on the attached sheet.

Approved as to form */s/ Abraham Fine*
AUSA ABRAHAM FINE

*/s/ Alofagia Onciano*
*Complainant's signature*

Alofagia Onciano, TIGTA
*Printed name and title*

Attested to by the applicant in accordance with the requirements of Fed. R. Crim. P. 4.1 by phone.

Date: February 3, 2021

*Virginia K. DeMarchi*
*Judge's signature*

City and state: San Jose, California

Hon. Virginia DeMarchi
*Printed name and title*

Print    Save As...    Attach    Reset

**AFFIDAVIT IN SUPPORT OF CRIMINAL COMPLAINT**

I, Alofagia Onciano, Special Agent, Treasury Inspector General for Tax Administration ("TIGTA"), being duly sworn, hereby state:

**INTRODUCTION AND AGENT BACKGROUND**

1. I submit this affidavit in support of a criminal complaint charging CHRISTINA BURDEN ("BURDEN") with the crime of bank fraud, in violation of 18 U.S.C. § 1344. Between April and June of 2020, BURDEN sought more than $4.6 million in Paycheck Protection Program ("PPP") and Economic Injury Disaster Loan ("EIDL") loans for at least four companies and actually obtained more than $1.1 million in loan proceeds on behalf of those companies. As specifically charged herein, on or about June 20, 2020, BURDEN, on behalf of her company Blessing Box Co LLC, applied for and later received $684,375 as a loan from Cross River Bank, an FDIC insured financial institution. BURDEN's loan applications, however, contained myriad false statements about the companies' revenue, payroll, number of employees, and the companies' dates of existence, among many others. As set forth below, our investigation has revealed that despite claiming upwards of 89 employees and hundreds of thousands of dollars in monthly revenue, BURDEN's companies do not appear to do any legitimate business nor have any employees. Once BURDEN received the fraudulently obtained funds, she used the money to go on a shopping spree, which included purchasing luxury items from Louis Vuitton, Neiman Marcus, and Nordstrom, privately chartered flights, and a boat rental. In addition, BURDEN sent money to other individuals who in turn purchased a couple of luxury automobiles.

2. I am a Special Agent for the Treasury Inspector General for Tax Administration, where I have been employed since January 2017. I am assigned to the Western Field Division in

Oakland, California.  My duties and responsibilities include investigations of fraud, waste, and abuse related to the IRS.  My duties also include the investigation of alleged criminal violations relating to the Internal Revenue Laws (Title 26 of the United States Code) and various criminal offenses related to Title 18 of the United States Code.  I successfully completed the Criminal Investigator Training Program at the Federal Law Enforcement Training Center and the Special Agent Basic Training Program at the TIGTA Training Academy, both located in Glynco, Georgia.

3. Prior to my current position as a Special Agent, I was employed as an IRS Revenue Officer from 2009 to 2017.  As a Revenue Officer, I conducted work related to collecting delinquent taxes, surveying for unreported taxes, and securing delinquent returns.  I received training in federal tax law, general business practices, to survey for unreported taxes, and to recognize potential fraud.  In 2009, I graduated from the University of the Pacific with a Bachelor of Arts degree in political science.

4. The facts set forth in this Affidavit are based on my personal knowledge; knowledge obtained from other individuals during my participation in this investigation, including federal law enforcement agents; interviews of witnesses; examination of documents, records and communications; review of information contained within government databases; and information gained through my training and experience.

5. This affidavit does not include each and every fact known to the government, but only those facts necessary to support a finding of probable cause to support the requested warrant.

**RELEVANT STATUTES**

6. **Title 18 United States Code, Section 1344**, reads in pertinent part:

"Whoever knowingly executes, or attempts to execute, a scheme or artifice (1) to defraud a financial institution; or (2) to obtain any of the moneys, funds, credits, assets, securities, or

2

other property owned by, or under the custody or control of, a financial institution, by means of false or fraudulent pretenses, representations, or promises; shall be fined not more than $1,000,000 or imprisoned not more than 30 years, or both."

## FACTS SUPORTING PROBABLE CAUSE

*The Paycheck Protection Program*

7. The CARES Act is a federal law enacted in or around March 2020 and designed to provide emergency financial assistance to the millions of Americans who are suffering the economic effects caused by the COVID-19 pandemic. One source of relief provided by the CARES Act was the authorization of up to $349 billion in forgivable loans to small businesses for job retention and certain other expenses, through a program referred to as the PPP. In or around April 2020, Congress authorized over $300 billion in additional PPP funding. The PPP is administered by the U.S. Small Business Administration ("SBA"), which is an executive agency of the United States.

8. To obtain a PPP loan, a business must submit a PPP loan application (SBA Form 2483), which is signed by an authorized representative of the business. The PPP loan application requires the business (through its authorized representative) to acknowledge the program rules and to make certain affirmative certifications regarding its eligibility.

9. One affirmative certification required by the form relates to the ownership of other businesses by the Applicant or any owner of the Applicant. Question Three on SBA Form 2483 reads: Is the Applicant or any owner of the Applicant an owner of any other business, or have common management with, any other business? If yes, list all businesses and describe the relationship on a separate sheet identified as addendum A. There is an option to check "Yes" or "No" in response to Question Three.

10. The PPP loan application requires the authorized representative to certify, in good faith, the Applicant's operating status by initialing on a line next to the statement:

> "The Applicant was in operation on February 15, 2020 and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC."

11. The PPP loan application also requires the authorized representative to certify, in good faith, the accuracy of information and documents submitted by placing initials next to the statement:

> "I further certify that the information provided in this application and the information provided in all supporting documents and forms is true and accurate in all material respects. I understand that knowingly making a false statement to obtain a guaranteed loan from SBA is punishable under the law, including under 18 USC 1001 and 3571 by imprisonment of not more than five years and/or a fine of up to $250,000; under 15 USC 645 by imprisonment of not more than two years and/or a fine of not more than $5,000; and, if submitted to a federally insured institution, under 18 USC 1014 by imprisonment of not more than thirty years and/or a fine of not more than $1,000,000."

12. In the application, the authorized representative of the Applicant must also provide, among other things, the business: (a) average monthly payroll expenses; and (b) the number of employees. These figures are used to calculate the business's eligibility and the amount of money it may receive under the PPP. Additionally, a business applying for a PPP loan must provide documentation showing their payroll expenses.

13. A PPP loan application must be processed by a participating lending financial institution. If the participating financial institution approves a loan application, it funds the loan using its monies, which are 100% guaranteed by the SBA. Participating financial institutions require the information provided in PPP loan applications to be truthful, including information about the business employees and payroll expenses.

14. Information from the application, including information about the borrower, the total amount of the loan, and the listed number of employees, is transmitted by the lending financial institution to the SBA in the course of processing the loan.

15. PPP loan proceeds must be used by the business for payroll costs, interest on mortgages, rent, and utilities. The PPP allows the interest and principal on the PPP loan to be forgiven if the business spends the loan proceeds on these items within a designated period of time (usually within twenty-four weeks of receiving the proceeds) and uses at least 60% of the PPP loan proceeds for payroll expenses.

*The Economic Injury Disaster Loan Program*

16. The SBA, through its Office of Disaster Assistance ("ODA"), provides financial assistance to businesses of all sizes, most private non-profit organizations, homeowners, and renters following a declared disaster. SBA also provides eligible small businesses necessary working capital to help overcome the economic injury of a declared disaster. Section 7(b)(2) of the Small Business Act, as amended, authorizes the SBA's Economic Injury Disaster Loan ("EIDL") Program. The SBA can make loans to eligible small businesses, eligible non-profit organizations, and eligible small agricultural cooperatives located in a disaster area that suffered substantial economic injury as a result of a disaster. The EIDL program provides low-interest financing to small businesses, renters, and homeowners in regions affected by declared disasters.

17. On March 13, 2020, the President of the United States determined that the ongoing COVID-19 pandemic is of sufficient severity and magnitude to warrant an emergency determination under section 501(b) of the Robert T. Stafford Disaster Relief and Emergency Assistance Act, 42 U.S.C. 5121-5207 ("Stafford Act"). Consequently, SBA has declared all states and territories eligible for EIDL assistance. An EIDL loan associated with COVID-19

receives automatic payment deferment for one-year, automatic deferment of previous disaster loans for homeowners and businesses through 2020, and a six-month deferment any current SBA 7(a) loan, 504 loan, or Microloan.

18. To obtain an EIDL and advance, a qualifying business must submit an application to the SBA and provide information about its operations, such as the number of employees, gross revenues for the 12-month period preceding the disaster, and cost of goods sold in the 12-month period preceding the disaster. In the case of EIDLs for COVID-19 relief, the 12-month period was that preceding January 31, 2020.

19. The SBA relies upon the self-certifications contained in the application to verify that the applicant is an eligible entity to receive the EIDL and/or EIDL Advance. The self-certification section reads:

> "CERTIFICATION AS TO TRUTHFUL INFORMATION: By signing this application, you [the applicant] certify that all information in your application and submitted with your application is true and correct to the best of your knowledge, and that you will submit truthful information in the future. "WARNING: Whoever wrongfully misapplies the proceeds of an SBA disaster loan shall be civilly liable to the Administrator [of the SBA] in an amount equal to one-and-one half times the original principal amount of the loan under 15 U.S.C. 636(b). In addition, any false statement or misrepresentation to the SBA may result in criminal, civil or administrative sanctions including, but not limited to: 1) fines and imprisonment, or both, under 15 U.S.C. 645, 18 U.S.C. 1001, 18 U.S.C. 1014, 18 U.S.C. 3571, and any other applicable laws; 2) treble damages and civil penalties under the False Claims Act, 31 U.S.C. 3729; 3) double damages and civil penalties under the Program Fraud Civil Remedies Act, 31 U.S.C. 3802; and 4) suspension and/or debarment from all Federal procurement and non-procurement transactions."

20. EIDL applications are submitted directly to the SBA through the SBA COVID-19 web portal and processed by the agency with support from a government contractor, Rapid Finance. The amount of the loan, if the application is approved, is determined based, in part, on the information provided by the application about employment, revenue, and cost of goods, as described above. Any funds issued under an EIDL or advance are issued directly by the SBA.

EIDL funds can be used for payroll expenses, sick leave, production costs, and business obligations, such as debts, rent, and mortgage payments. If the applicant also obtains a loan under the Paycheck Protection Program, the EIDL funds cannot be used for the same purpose as the Paycheck Protection Program funds.

*Relevant Individual and Entities*

21. BURDEN applied for loans on behalf of four companies, three of which were created after the cut-off date, as established by the CARES Act, requiring a business to be have been in operation before February 15, 2020 to be eligible for PPP loans.

|   | Company Name | Principal Name | Approximate Date Registered with the California Secretary of State | Date Registered with the IRS | Number of Employees Claimed |
|---|---|---|---|---|---|
| 1 | BURDEN CONSULTING GROUP LLC | CHRISTINA BURDEN | 01/13/2020 | 01/29/2020 | 0 and 15[1] |
| 2 | BLESSING BOX CO LLC | CHRISTINA BURDEN | 04/24/2020 | 04/29/2020 | 13 and 89[2] |
| 3 | PINKIE'S PLACE | CHRISTINA BURDEN | N/A | 06/18/2020 | N/A |
| 4 | CREATIVE SYNERGY GROUP | CHRISTINA BURDEN | N/A | 06/19/2020 | 15 |

22. BURDEN listed herself as the authorized representative and either president, owner or founder of the four companies that applied for PPP loans.

23. I conducted an Internet search for these businesses and found no record of any operating websites for the four entities.

24. BURDEN was a resident of Oakland, California at all times relevant to the events described herein. Three of the four companies registered with the Internal Revenue Service using the address of BURDEN's apartment in Oakland, California. Six of the eleven

---

[1] On Burden Consulting Group's application to SBA, the number of employees listed is 0. On the PPP application submitted to Blue Vine, the number of employees listed is 15.

[2] On Blessing Box's PPP application to Blue Vine, it listed 13 employees. On the three PPP applications to Divvy Pay, First Home Bank, and Kabbage, it listed 89 employees.

applications were submitted from an Internet Protocol address registered to BURDEN at the Oakland apartment.

*The Lending Federal and Financial Institutions*

25. The SBA ODA controls the EIDL program and is headquartered at 409 3rd Street SW, Washington, DC 20416. The ODA has authority over all loans created and disbursed under the EIDL program. EIDL principle proceeds and available Cash Advance Grants (up to $10,000) are solely funded by the SBA and are disbursed from government-controlled accounts maintained with the U.S. Treasury at Federal Reserve Banks throughout the United States.

26. Blue Vine partnered with Celtic Bank to process PPP loan applications. Celtic Bank is a Federal Deposit Insurance Corporation ("FDIC") insured bank located in Salt Lake City, Utah. Celtic Bank participated in the SBA's PPP as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

27. Kabbage and Divvy Pay partnered with Cross River Bank to process PPP loan applications. Cross River Bank is an FDIC insured bank located in Fort Lee, New Jersey. Cross River Bank participated in the SBA's PPP as a lender and, as such, was authorized to lend funds to eligible borrowers under the terms of the PPP.

*Summary of BURDEN's Fraudulent Loan Applications*

28. The government has obtained, and I have reviewed, copies of 11 loan applications that were submitted by BURDEN. Each of those loan applications contained myriad materially false statements. Specifically, the loan applications contained the following:

- False statements regarding ownership of other businesses. Despite owning several businesses (as evidenced by her many loan applications), BURDEN checked the box on at least three applications indicating that she did not own any other businesses.

- False statements regarding the dates of operation of the subject entities. BURDEN affirmed that the business was in operation before February 15, 2020 on at least three applications despite the fact that three of the entities were registered after that date.

- False statements regarding the number of employees and monthly payroll expenses. On at least three applications, BURDEN affirmed that her businesses had upwards of 89 employees and monthly payroll north of $700,000. A review of BURDEN's entities' tax records reveal, however, that none of them has ever paid any payroll taxes or submitted payroll tax forms. And a review of the bank records make clear that the money BURDEN received from the loan applications was not used for payroll.

- Doctored bank records. At least five of BURDEN's applications contained bank records supposedly supporting the entities' claims regarding payroll expenses. A review of the actual bank records from BURDEN and her entities, however, demonstrate that the bank records submitted in support of the loans were fraudulent.

- Doctored tax forms. At least eight of of BURDEN's loan applications contained tax forms (Form 940, Form 941, or Form W-3) supposedly showing payroll taxes supporting the number of employees and payroll she claimed. A review of the various entities' tax records, however, show that none of them ever filed such payroll forms with the IRS.

### *BURDEN's June 20, 2020, Fraudulent PPP Loan Application on Behalf of Blessing Box*

29.   On or about June 20, 2020, BURDEN submitted a PPP loan application on behalf of Blessing Box for the amount of $684,375 to Kabbage, who partnered with Cross River Bank to process PPP loan applications. Cross River Bank is an FDIC insured bank located in Fort Lee, New Jersey. On the application, Blessing Box listed average monthly payroll of $273,750 with 89 employees. On the application, BURDEN is listed as the founder (with 90% of the equity) and the business's address is listed as BURDEN's apartment in Oakland. The loan was approved and the funds were disbursed to BURDEN's personal bank account.

30.   On the application, BURDEN made a checkmark in the box under the column "No" to certify that she is not an owner of any other business, or has common management with, any other business.

31.   On the application, BURDEN certified that Blessing Box was in operation and had 89 employees as of February 15, 2020. However, according to California Secretary of State records, Blessing Box was not organized with the California Secretary of State until April 24,

2020.

32. To further support the loan application, BURDEN submitted document purporting to be Blessing Box's IRS Form W-3 for 2019. The form reported the total compensation paid in 2019 was $8,900,000 to 89 employees. However, as indicated above, Blessing Box was not registered to do business until April of 2020. A review of Blessing Box's tax records revealed that it never filed a Form W-3 with the IRS. As such, there is probable cause to believe the IRS form BURDEN submitted in support of the loan application was fraudulent. Furthermore, our investigation, based on subpoenaed records and Internet research, has revealed that Blessing Box does not appear to have any employees and does not appear to do any legitimate business.[3]

### *BURDEN's Other Fraudulent Loan Applications*

33. The following chart lists the loan applications BURDEN submitted between April and June of 2020 (including the Blessing Box loan application described above), followed by a summary of the false statements contained in some of those loan applications.

---

[3] Although BURDEN submitted a trademark application for the mark "Blessing Box" on June 11, 2020 with the United States Patent and Trademark Office, Blessing Box does not appear to do any legitimate business and does not appear to have any employees.

|   | Approximate Date of Application | Company Name | Program | Financial Institution | Status | Amount Sought |
|---|---|---|---|---|---|---|
| 1 | 04/07/2020 | BURDEN CONSULTING GROUP LLC | EIDL | SBA | FUNDED | $150,900.00 |
| 2 | 05/17/2020 | BURDEN CONSULTING GROUP LLC | PPP | Celtic Bank | FUNDED | $307,916.00 |
| 3 | 06/04/2020 | BLESSING BOX CO LLC | PPP | Celtic Bank | REJECTED | N/A |
| 4 | 06/11/2020 | BLESSING BOX CO LLC | PPP | Cross River Bank | DENIED | $1,854,166.67 |
| 5 | 06/13/2020 | BLESSING BOX CO LLC | PPP | Celtic Bank | REJECTED | N/A |
| 6 | 06/18/2020 | BLESSING BOX CO LLC | PPP | First Home Bank | DENIED | $1,700,000.00 |
| 7 | 06/19/2020 | PINKIES PLACE | PPP | Celtic Bank | REJECTED | N/A |
| 8 | 06/19/2020 | PINKIES PLACE | PPP | Celtic Bank | CANCELLED | N/A |
| 9 | 06/19/2020 | PINKIES PLACE | PPP | Celtic Bank | CANCELLED | N/A |
| 10 | 06/19/2020 | CREATIVE SYNERGY GROUP | PPP | Celtic Bank | CANCELLED | N/A |
| 11 | 06/20/2020 | BLESSING BOX CO LLC | PPP | Cross River Bank | FUNDED | $684,375.00 |
|   |   |   |   |   | TOTAL | $4,696,637.67 |

EIDL Application to the SBA on behalf of Burden Consulting Group

34. On or about April 7, 2020, BURDEN submitted an EIDL loan application for $150,000 to the SBA, on behalf of Burden Consulting Group. The application listed the business industry as "Retail" and "ClothingApparel," and the number of employees as of January 31, 2020 as zero. The loan was approved, and the funds were disbursed to BURDEN on or about June 16, 2020.

35. On the application, BURDEN listed Burden Consulting Group's gross revenues for the twelve month period prior to January 31, 2020 as $856,000 and their cost of goods sold for the same period as $121,000. I have reviewed tax records confirming that Burden Consulting Group has never submitted a tax return to the IRS. The earliest date Burden Consulting Group existed is January 13, 2020, when it was organized with the California Secretary of State. As such, BURDEN claimed on the application that Burden Consulting Group had amassed, within two weeks of creation, $856,000 in gross receipts and $121,000 in cost of goods sold. However, a review of BURDEN's bank records did not reveal any such income or spending. In fact, there is no indication that BURDEN or Burden Consulting Group is involved in any type of business.

11

PPP Application on behalf of Burden Consulting Group

36. On or about May 17, 2020, BURDEN submitted a PPP loan application on behalf of Burden Consulting Group for the amount of $307,916 to Blue Vine, which partnered with Celtic Bank to process PPP loan applications. Celtic Bank is a Federal Deposit Insurance Corporation ("FDIC") insured bank located in Salt Lake City, Utah. On the application, Burden Consulting Group listed an average monthly payroll of $123,166.60 with 15 employees. Under the Applicant Ownership Section of the PPP application that states, "List all owners of 20% or more of the equity of the Applicant" BURDEN lists her title as "Owner" with 100% ownership.

37. On Form 2483 of the application, BURDEN made a checkmark in the box under the column "No" to certify that she is not an owner of any other business, or has common management with, any other business. This was false. As demonstrated by BURDEN's other loan applications, BURDEN was fully aware that she owned other businesses.

38. On the application, through the placement of her initials, BURDEN certified that Burden Consulting Group was in operation on February 15, 2020, and had employees for whom it paid salaries and payroll taxes or paid independent contractors, as reported on Form(s) 1099-MISC. To further support the loan application, BURDEN submitted documents purporting to be Burden Consulting Group's 2019 IRS Forms 941. According to IRS records, however, Burden Consulting Group has never filed an IRS Form 941. And as stated above, Burden Consulting Group did not register to do business until January of 2020. Thus, there is probable cause to believe the IRS Forms 941 submitted in support of Burden Consulting Group's PPP loan application were fraudulent.

39. To support the payroll obligations claimed in the loan application, BURDEN submitted copies of two Navy Federal Credit Union ("NFCU") bank statements: (1) a

Burden Consulting Group business account statement for February 11, 2020 to February 28, 2020, and (2) a personal account statement for April 11, 2020 to May 10, 2020. Records received from NFCU pursuant to a subpoena revealed that the Burden Consulting Group business account statement provided was fraudulently altered. Specifically, it appears that BURDEN's April 11, 2020 to May 10, 2020, personal account statement was altered to make it appear that it is a business statement for Burden Consulting Group. (Some pages of the purported Burden Consulting Group statement list February 11, 2020 to February 10, 2020 as the statement period and other pages list February 11, 2020 to February 28, 2020.) While the line items on the two statements are largely identical, the dates, names, and previous balance on the purported Burden Consulting Group statement have been altered. Specifically, BURDEN altered the statement to make it appear that it is from Burden Consulting Group and that it had a previous balance of over $700,000.

40. The loan was approved and the funds were disbursed to BURDEN's personal NFCU bank account.

PPP Applications on behalf of Blessing Box

41. On or about June 11, 2020, BURDEN submitted a PPP loan application on behalf of Blessing Box for the amount of $1,854,166.67 to Divvy Pay, which partnered with Cross River Bank to process PPP loan applications. Cross River Bank is an FDIC insured bank whose headquarters are located in Fort Lee, New Jersey. On the application, Blessing Box listed average monthly payroll of $741,666.67 with 89 employees. On the application, BURDEN is listed as the sole owner. On or about June 14, 2020, Cross River Bank denied the loan application.

42. On the application, BURDEN certified the information provided on the PPP Calculator as accurate. The PPP Calculator, that accompanied the application, listed 89

employees as of February 15, 2020.  However, according to California Secretary of State records, Blessing Box was organized with the California Secretary of State on April 24, 2020.

43.     To support the application, BURDEN submitted an NFCU statement purportedly for Blessing Box's account for a statement period of February 1, 2020 to February 31, 2020. Records received from NFCU pursuant to a subpoena revealed that the statement BURDEN provided was fraudulently altered and does not match the bank statements received via subpoena.  In addition, the statement submitted by BURDEN reflects a statement period of February 1, 2020 to February 31, 2020.  February 2020 had 29 days, and there has never been a year where February had 31 days, further demonstrating that the statement had been altered.

44.     To further support the loan application, BURDEN submitted documents purporting to be Blessing Box's IRS Forms 940 and W-3 for 2019.  Both forms reported the total compensation paid in 2019 was $8,900,000.  In addition, the IRS Form W-3 reported 89 employees in 2019.  However, as indicated above, Blessing Box was not registered to do business until April of 2020.  And a review of Blessing Box's tax records revealed that it never filed a Form 940 or W-3 with the IRS.  Furthermore, our investigation, based on subpoenaed records and Internet research, has revealed that Blessing Box does not appear to have any employees and does not appear to do any legitimate business.

45.     On or about June 18, 2020, BURDEN signed a PPP loan application that was submitted on behalf of Blessing Box for the amount of $1,700,000 to First Home Bank.  First Home Bank is an FDIC insured bank located in Mountain Grove, Missouri.  That loan application contained false statements and fraudulent supporting IRS forms nearly identical to those BURDEN submitted in the application to Divvy Pay on behalf of Blessing Box.  On or about June 24, 2020, First Home Bank declined the loan application.

PPP Applications on behalf of Pinkie's Place and Creative Synergy Group

46. On or about June 19, 2020, BURDEN submitted three PPP loan applications on behalf of an entity called Pinkie's Place and one on behalf of an entity called Creative Synergy Group. According to the California and Texas Secretary of State there are no records of these entities registered to conduct business. Records from the Internal Revenue Service reveal that these entities were issued Employer Identification Numbers after the February 15, 2020, deadline set forth in the CARES Act (both EIN's were obtained in June 2020, just days before BURDEN submitted the loan applications on their behalf). None of these applications sought a specific loan amount, and each was either rejected for incompleteness or cancelled.

***BURDEN Spent the PPP Proceeds on Luxury and Personal Items***

47. The CARES Act required that PPP funds be used for specific purposes, and on each PPP loan application, BURDEN certified that:

> All SBA loan proceeds will be used only for business-related purposes as specified in the loan application and consistent with the Paycheck Protection Program Rule…
>
> The funds will be used to retain workers and maintain payroll or make mortgage payments, lease payments, and utility payments; as specified under the Paycheck Protection Program Rule; I understand that if the funds are knowingly used for unauthorized purposes, the federal government may hold me legally liable, such as for charges of fraud…

48. Our investigation has revealed that BURDEN did not spend any of the loan proceeds on legitimate business and payroll expenses. Instead, BURDEN's bank records reveal that she spent the bulk of the funds as follows:

- $184,000 on airfare, private jet travel, and hotel expenses;
- $124,000 on luxury purchases from Louis Vuitton, Neiman Marcus, Nordstrom, the San Francisco Giants Dugout Store, Sunglass Hut, Tumi, and Wayfair;
- $16,000 on boat and car rentals
- $14,000 on various restaurant and entertainment expenses;
- In addition, BURDEN wired hundreds of thousands of dollars to individuals who do not appear to be employees of the businesses or to have any connection to the

businesses. At least $150,000 of those wired funds was spent on automobiles from Mercedes, Land Rover, and Nissan.

49. Among these and many other expenditures, some of the largest payments drawn on the accounts in June through October 2020 are listed below:

| Date | Description | Amount |
|---|---|---|
| 07/17/2020 | XOJET (private jet charter company) | $61,992.36 |
| 07/19/2020 | XOJET | $11,385.00 |
| 07/29/2020 | Louis Vuitton | $16,267.40 |
| 09/05/2020 | Neiman Marcus | $14,330.05 |
| 09/06/2020 | Louis Vuitton | $12,678.76 |
| 09/14/2020 | Louis Vuitton | $10,440.68 |
| 09/18/2020 | Louis Vuitton | $17,807.13 |
| 09/19/2020 | XOJET | $39,328.97 |
| 10/09/2020 | FREEDOM JETS (private jet charter company) | $34,235.00 |

//

//

//

//

//

//

//

//

//

//

//

//

## **CONCLUSION**

50. Based on my training and experience, and the information provided in this affidavit, I respectfully submit that there is probable cause to believe that on or about June 20, 2020, within the Northern District of California, CHRISTINA BURDEN violated 18 U.S.C. § 1344 (bank fraud).

I declare under penalty of perjury that the statements above are true and correct to the best of my knowledge and belief.

/s/
Special Agent Alofagia Onciano
Treasury Inspector General for
Tax Administration

Sworn to before me over the telephone and signed by me pursuant to Fed.R.Crim.P. 4.1 and 4(d) on this  3  day of February, 2021. This application and warrant are to be filed under seal.

The Honorable Virginia DeMarchi
United States Magistrate Judge